UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

MICHAEL D. ANDERSON,                                                    Plaintiffs

v.                                                    Civil Action No. 3:25-cv-802-RGJ

LAWRENCE "LARRY" FARMER, *et al.*                                       Defendants

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Louisville/Jefferson County Metro Government ("Metro"), former Louisville Metro Police Department ("LMPD") Chief Jacquelyn Gwinn-Villaroel ("Gwinn-Villaroel") in her official capacity, current LMPD Chief Paul Humphrey ("Humphrey") in his official capacity, and LMPD officer Lawrence "Larry" Farmer ("Farmer") in his individual capacity, all, separately, move to dismiss claims under Fed. R. Civ. P. 12(b)(6). [DE 12; DE 14; DE 15; DE 20]. Plaintiff responded. [DE 23; DE 24; DE 25; DE 28]. Each Defendant replied. [DE 29; DE 30; DE 31; DE 32]. These motions are ripe. For the reasons explained below, the Court **GRANTS** Metro's motion to dismiss [DE 12], **GRANTS** Gwinn-Villaroel's motion to dismiss [DE 14], **GRANTS** Humphrey's motion to dismiss [DE 15], and **GRANTS in part and DENIES in part** Farmer's motion to dismiss. [DE 20].

I.      **Background[1]**

Michael D. Anderson ("Anderson") is a thirty-year-old resident of Louisville, Kentucky. [DE 1 at 3]. He is married and has five children. [*Id.* at 4]. On December 24, 2024, Christmas Eve, Anderson was at Thornton's gas station with his children in Jefferson County, Kentucky. [*Id.*]. Then, LMPD arrived at Thornton's and arrested him pursuant to a purported outstanding arrest

---

[1] The Court accepts facts in the operative Complaint as true for the present Motion. When considering a motion to dismiss, courts must presume all factual allegations in the complaint to be true and make all reasonable inferences in favor of the non-moving party. *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citation omitted).

1

warrant that was issued for "Michael Anderson." [*Id.*]. Anderson was unaware of any outstanding warrant for his arrest. [*Id.*]. The officers placed him in handcuffs and took him to jail as his children watched. [*Id.*].

The warrant for Anderson was issued on January 18, 2023. [*Id.*]. The warrant alleged that Anderson struck his former partner, fired a gun at her direction, and fled the scene. [*Id.*]. Anderson, however, had no recollection of these events. [*Id.*]. Anderson was "shocked, terrified, and could not understand why he was being arrested for this heinous crime that he did not commit." [*Id.* at 5]. Anderon was arraigned in Jefferson County District Court on December 26, 2024, and released on a $10,000 bond. [*Id.*]. Anderson had two more court appearances at Jefferson County District Court before his case was presented to, and subsequently indicted by, a Jefferson County Grand Jury on February 6, 2025. [*Id.* at 6]. On February 10, 2025, Anderson was formally charged and arraigned in Jefferson Circuit Court with first-degree wanton endangerment, fourth-degree domestic violence assault, and assigned a $20,000 bond. [*Id.*].

On April 23, 2025, *nearly 4 months after his arrest,* Anderson was released after a bond hearing. [*Id.*]. Anderson was finally released because the prosecutor, after he eventually reviewed the body camera videos, admitted Anderson did not match the suspect in the footage. [*Id.*]. In other words, the prosecutor realized the suspect  was a different Michael Anderson. [*Id.*]. On May 14, 2025, the Jefferson Circuit Court dismissed all charges with prejudice. [*Id.*]. After the charges were dropped, Anderson filed a complaint with the Louisville Metro Office of Inspector General ("OIG")[2].  [*Id.*].

The OIG findings detailed that on January 17, 2023, the case was assigned to Farmer as lead detective. [*Id.* at 8]. During the investigation, Farmer reviewed the responding officer's body-

---

[2] The OIG office is relatively new in Louisville, originating within the last 6 years. LOU.-JEFF. METRO CNTY. GOV'T, KY., ORDINANCES §§ 36.70; 36.78 (2020).

cam footage, photographs, and interviewed the victim. [*Id.*]. On January 18, 2023, Farmer obtained a photograph of a potential suspect, and, on the same day, obtained a positive identification of the suspect from the victim. [*Id.*]. Farmer, however, obtained a CourtNet[3] printout for Michael D. Anderson, instead of the correct Michael Anderson. [*Id.*]. Anderson alleges this is because Michael D. Anderson was the first black Michael Anderson to appear in CourtNet. [*Id.*]. Farmer obtained a criminal complaint and warrant based upon the printout for Michael D. Anderson. [*Id.* at 9].

Throughout the investigative process, Farmer reported at all times to James "Wes" Clark ("Clark"). [*Id.*]. Clark approved and ratified Farmer's investigation, case file, and investigatory materials such as the criminal complaint and warrant. [*Id.*]. According to Anderson, however, Clark failed to conduct a reasonable review of Farmer's materials at any time throughout the investigation. [*Id.*].

After Anderson's Christmas Eve arrest, on February 6, 2025, Farmer testified before a Grand Jury to his investigation and findings of Anderson. [*Id.* at 10]. He stated that Anderson was the correct suspect who assaulted and fired a gunshot at the victim. [*Id.* at 10]. Anderson was subsequently indicted and arraigned. [*Id.*].

At a pretrial conference on April 23, 2025, the prosecuting Attorney admitted that Anderson did not look like the suspect in the body camera video of the 2023 offense. [*Id.*]. The process took nearly four months because the prosecutor had not yet seen Anderson in person. [*Id.*]. The prosecutor then reached out Farmer to alert him that he believed the wrong individual was arrested. [*Id.*]. Farmer went back to review his case file. [*Id.* at 11].

Upon review, Farmer realized that he had "used information from Courtnet to list in the suspects (sic) descriptors with a different Michael Anderson." [*Id.*]. Farmer called the prosecutor

---

[3] CourtNet is the official online civil and criminal court access system used in Kentucky.

to let him know that there had been a "mistake in the descriptors listed for Michael Anderson in the arrest warrant." [*Id.* at 12]. Shortly thereafter, the charges against Anderson were dismissed. [*Id.*]. Based upon this incident, Humphrey initiated a formal internal investigation of the LMPD in August 2025. [*Id.*].

Deeply traumatized by "his wrongful arrest and subsequent unlawful detention for a crime that he did not commit" Anderson filed this suit. Farmer and Clark are named in their individual capacities, Gwinn-Villaroel and Humphrey in their official capacities as the Police Chief of Metro, and Metro. [*Id.* at 3-4]. Anderson alleges various violations of his civil rights pursuant to 42 U.S.C. § 1983 and similarly under Kentucky state law. [*Id.* at 16-21]. All Defendants, outside of Clark, have moved to dismiss their respectively named claims.

## II.    Standard

Federal Rule of Civil Procedure 12(b)(6) instructs that a court must dismiss a complaint if it "fail[s] to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). To properly state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). When considering a motion to dismiss, courts must presume all factual allegations in the complaint to be true and make all reasonable inferences in favor of the non-moving party. *Total Benefits Plan. Agency, Inc.*, 552 F.3d at 434. "But the district court need not accept a bare assertion of legal conclusions." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citation omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "A complaint will be dismissed . . . if no law supports the claims made, if the facts alleged are insufficient to state a claim, or if the face of the complaint presents an insurmountable bar to relief." *Southfield Educ. Ass'n v. Southfield Bd. of Educ.*, 570 F. App'x 485, 487 (6th Cir. 2014) (citing *Twombly*, 550 U.S. at 561–64).

## III.    Discussion

### A.  Metro's Motion to Dismiss [DE 12]

Anderson asserts three claims against Metro. Two state-law claims: (1) negligent hiring, supervision, retention, and (2) respondeat superior. [DE 1 at 25-27]. And a § 1983, *Monell v. Department of Social Servs. of City of New York,* 436 U.S. 658, 691 (1978), claim. Metro moves to dismiss all three.

#### 1.  State-Law Claims

Metro asserts that the state-law claims are barred by sovereign immunity and the claims should be dismissed with prejudice. [DE 12 at 75-77]. Anderson does not respond to the merits, but argues that dismissal should be without prejudice. [DE 23 at 147-48].

Sovereign immunity precludes an action "against the state unless the state has given its consent or otherwise waived its immunity." *Yanero v. Davis*, 65 S.W.3d 510, 517 (Ky. 2001). State and county governments are likewise entitled to sovereign immunity. *Id.* at 526. "The absolute immunity from suit afforded to the state also extends to public officials sued in their representative

(official) capacities, when the state is the real party against which relief in such cases is sought." *Id.* at 518.

Pursuant to KY. REV. STAT. ANN. § 67C.101(2)(e), Metro is a consolidated local government. *Louisville/Jefferson Cnty. Metro Gov't v. Cowan,* 508 S.W.3d 107, 109 (Ky. App. 2016). And a "consolidated local government shall be accorded the same sovereign immunity granted counties, their agencies, officers, and employees." KY. REV. STAT. ANN. § 67.C101(2)(e). Therefore, "absent an explicit statutory waiver, Metro Government is entitled to sovereign immunity." *Jewish Hosp. Healthcare Servs., Inc. v. Louisville/Jefferson Cnty. Metro Gov't,* 270 S.W.3d 905, 907 (Ky. App. 2008). The Kentucky Supreme Court recently affirmed that Metro is afforded sovereign immunity. *Meinhart v. Louisville Metro Gov't*, 627 S.W.3d 824, 836 (Ky. 2021) (affirming an appellate decision granting Metro sovereign immunity in a negligence suit). And Metro has not waived their sovereign immunity in negligence cases. *Cowan,* 508 S.W.3d at 109 (granting Metro sovereign immunity in a negligence suit); *Meinhart*, 627 S.W.3d at 830 (same). As a result, Metro is granted sovereign immunity with respect to the state-law claims.

Notwithstanding the above, Anderson argues that because sovereign immunity is "jurisdictional," dismissal should be without prejudice. [DE 23 at 147-48]. He claims that a dismissal without prejudice will allow him "to pursue the claims in another jurisdiction or amend the pleadings as appropriate." [*Id.* at 148]. Anderson relies on *Moore v. Lafyette Life Ins. Co.,* 458 F.3d 416 (6th Cir. 2006) and *Holloway v. Brush*, 220 F.3d 767 (6th Cir. 2000). *Moore* involved a claimant suing under the Employee Retirement Income Security Act (ERISA) against a plan administrator. 458 F.3d at 424-25. The case is inapplicable to the case at bar. *Holloway* is more closely related, involving a Section 1983 lawsuit against the Clermont County Court of Common Pleas. 220 F.3d at 771. The district court in *Halloway* concluded that Clermont County was

6

"absolutely immune from suit because it acted as an integral part of the judicial system" and thus was immune from a lawsuit under Section 1983. *Id.* at 772. However, absolute immunity is separate and distinct from sovereign immunity, which is at issue here. As a result, *Holloway* does not control.

Accordingly, the state-law claims against Metro will be dismissed with prejudice because sovereign immunity "entitles its possessor to be free from the burdens of defending the action, not merely . . . from liability . . . Immunity from suit includes protection against the cost of trial and the burdens of broad-reaching discovery that are peculiarly disruptive of effective government." *Breathitt Cnty. Bd. Of Educ. v. Prater,* 292 S.W.3d 883, 886 (Ky. 2009) (internal citations and quotations omitted). Sovereign immunity is "intended to act as a shield, not just from liability, but also the burdens of a suit." *Meinhart*, 627 S.W.3d at 836. In *Sistrunk v. City of Hillview,* Williene Sistrunk sued Metro and alleged state-law claims of negligence and federal law claims pursuant to *Monell*. 545 F. Supp. 3d 493, 497 (W.D. Ky. 2021). After finding that the state law claims were barred by sovereign immunity, the Court "dismisse[d] Sistrunk's state-law claims against Louisville Metro with prejudice." *Id.* at 506. And in another similar case, *Carter v. Louisville Metro Police Dep't*, the Court dismissed the state law claims against Metro with prejudice, while dismissing the Section 1983 claims without prejudice. 2023 WL 5986137, *10 (W.D. Ky. Sept. 14, 2023).

As a result, Metro's motion to dismiss the state-law claims is **GRANTED WITH PREJUDICE.**

### 2.  *§ 1983 Monell Claims*

When the "execution of a government's policy or custom . . . inflicts the [constitutional] injury," the local government can be held liable under § 1983. *Monell.*, 436 U.S. at 694. A plaintiff

must show that: "1) the [municipality's] training program was inadequate for the tasks that [its employees] must perform; 2) the inadequacy was the result of the [municipality's] deliberate indifference; and 3) the inadequacy was closely related to or actually caused the injury." *Jackson v. City of Cleveland*, 925 F.3d 793, 834 (6th Cir. 2019) (quoting *Ciminillo v. Streicher*, 434 F.3d 461, 469 (6th Cir. 2006)). *Monell* claims allow for municipal liability "for the constitutional violations of their employees only where the municipality's policy or custom led to the violation." *Chambers v. Sanders*, 63 F.4th 1092, 1101–02 (6th Cir. 2023) (citation and internal quotations omitted).

Here, Anderson states that Metro had a "policy, practice, or custom of using poor, unreasonable, and inadequate investigation methods and techniques, and inadequately staffing the domestic violence unit." [DE 1 at 21]. And that Metro made a "policy, practice, or custom of inadequate staffing, hiring, supervision, training, retention, and discipline of personnel in the domestic violence unit that resulted in constitutional injuries." [*Id.* at 22]. Metro states that these assertions fall either within the "failure to train" theory or the "policy or custom theory," but nonetheless, fail under either theory. [DE 12 at 79]. Anderson only responds to the claim that he failed to plead a viable policy or custom claim, stating that the Complaint "alleges detailed facts showing that Metro maintained dangerous policies, customs, and patterns of practice." [DE 23 at 142].

### i. § 1983 Policy or Custom

To state a § 1983 claim based on a municipal policy or custom, Anderson must "identify the policy, connect the policy to [Metro] itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993). A plaintiff generally has four ways to demonstrate an unlawful policy or custom: "[t]he

plaintiff can look to (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Spears v. Ruth*, 589 F.3d 249, 256 (6th Cir. 2009) (quoting *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)). "[P]laintiffs must identify a *particular* municipal policy or custom and show that it caused their constitutional injury." *Wright v. Louisville Metro Gov't, et al.*, 144 F.4th 817, 827 (6th Cir. 2025). "Even after showing an unlawful policy or custom, a plaintiff must also demonstrate a direct causal link between the policy and the alleged constitutional violation in order to show that the municipality's deliberate conduct can be deemed the 'moving force' behind the violation." *Jones v. Louisville/Jefferson Cnty. Metro Gov't*, 482 F. Supp. 3d 584, 597 (W.D. Ky. 2020) (quoting *Spears*, 589 F.3d 249 at 256 (cleaned up)). "[P]roof merely that such a policy or custom was 'likely' to cause a particular violation is not sufficient; there must be proven at least an 'affirmative link' between policy or custom and violation; in tort principle terms, the causal connection must be 'proximate,' not merely 'but-for' causation-in-fact." *Mann v. Helmig*, 289 F. App'x 845, 850 (6th Cir. 2008) (quoting *Spell v. McDaniel*, 824 F.2d 1380, 1388 (4th Cir. 1987)). At the motion to dismiss stage, it is sufficient for a plaintiff to plausibly allege an unlawful policy or custom and a direct causal link to the harm. *Daugherty v. Louisville-Jefferson Cnty. Metro Gov't*, 495 F. Supp. 3d 513, 524 (W.D. Ky. 2020) (finding plaintiffs sufficiently stated a § 1983 claim based on a municipal policy or custom where "Plaintiffs allege[d] a specific policy of targeting African American and Hispanic males for traffic stops").

Metro argues that the only source of a "particular" policy that Anderson relies on is the U.S. Department of Justice 2023 report ("DOJ report") following its investigation of Metro. [DE 12 at 80]. And the DOJ report is "insufficient" to support a *Monell* claim. [*Id.*]. In support of this

9

argument, Metro relies on *Wright*, where the Sixth Circuit was asked to consider the DOJ report during an appeal of a motion to dismiss a *Monell* claim. *Wright*, 144 F.4th at 827-28. The Sixth Circuit affirmed the district court in *refusing* to consider the DOJ report. *Id.* The Sixth Circuit added that the district court "shouldn't consider the report" at all because "[c]ourts take judicial notice of facts, not documents." *Id.* And that by considering the DOJ report as a basis for a *Monell* claim, it would amount to "supplement[ing] the record." *Id.*

Although this Court has previously allowed *Monell* claims to move forward pursuant to the DOJ report, these decisions were prior to the Sixth Circuit's decision in *Wright*. *See Weaver v. Louisville-Jefferson Cnty. Metro Gov't*, 2024 WL 2819556, *2 (W.D. Ky. June 3, 2024); *see also Lang v. Louisville Metro Gov't,* 2024 WL 3378951, *6 (W.D. Ky. July 11, 2024). Additionally, on May 21, 2025, the DOJ retracted the findings of its 2023 report. *See* Press Release, U.S. DEP'T OF JUST., *The U.S. Department of Justice's Civil Rights Division Dismisses Biden-Era Police Investigations and Proposed Police Consent Decrees in Louisville and Minneapolis*, (May 21, 2025), https://www.justice.gov/opa/pr/us-department-justices-civil-rights-division-dismisses-biden-era-police-investigations-and. Since the retraction of the DOJ report, and in conjunction with *Wright*, trial courts throughout the Sixth Circuit have refused to accept the DOJ report as a basis for a *Monell* claim. *See, e.g., Kiner v. City of Memphis*, 2025 WL 1577830, *1 n.2 (W.D. Tenn. June 3, 2025). Also, in *Miller v. Baston,* the Court asked for more briefing at the summary judgment stage regarding whether the DOJ report was still a valid basis for a *Monell* cause of action since its retraction. 2025 WL 2802970, *23 (W.D. Ky. Sept. 30, 2025).

The latest guidance from the Sixth Circuit comes from *Kiner v. City of Memphis*, 2026 WL 1065014 (6th Cir. Apr. 14, 2026). At the motion to dismiss stage, the district court dismissed Kiner's *Monell* claim against Memphis and explicitly refused to consider a separate, but similar,

10

DOJ report,[4] focused on the Memphis Police Department. *Id.* at *1-3. The Sixth Circuit affirmed. *Id.* The Sixth Circuit held that Kiner's request to consider the DOJ report in attempt to "show[] rampant institutional bias and wrongdoing in the MPD are not well-taken, as they have no bearing on whether his complaint stated a viable municipal-liability claim." *Id.*

Here, the Complaint bases its *Monell* liability pursuant to the DOJ report. [DE 1 at 21-22]. The Complaint states, "[t]hese policies, practices, and customs are evidenced by the findings and conclusions contained in the 2023 DOJ report." [*Id.*]. And further, "LMPD knowingly and deliberately failed to implement and/or enforce adequate polices, practices, and customs even after being notified of the risks and liabilities associated with its policies, procedures, practices, customs, hiring, training, supervision, retention, and discipline by the findings and conclusions contained in the 2023 DOJ report." [*Id.*]. Without more, the Complaint only states "conclusory legal allegations that do not include specific facts necessary to establish the cause of action." *Bickerstaff v. Lucarelli¸* 830 F.3d 388, 396 (6th Cir. 2016). Therefore, because Anderson's "conclusory allegations that the defendants had an unlawful policy, unaccompanied by supporting factual allegations, 'are not entitled to the assumption of truth'" the claim must be dismissed. *Taylor v. Brandon*, 2016 WL 258644, at *3 (W.D. Ky. Jan. 20, 2016) (quoting *Iqbal,* 556 U.S. at 679).

### ii.    § 1983 Failure to Train

To state a § 1983 claim based on a municipality's failure-to-train or failure-to-supervise, the plaintiff must allege: "(1) the training or supervision was inadequate for the tasks performed;

---

[4] The Memphis DOJ report was similarly retracted in the same publication that retracted the Louisville DOJ report. *See* Press Release, *The U.S. Department of Justice's Civil Rights Division Dismisses Biden-Era Police Investigations and Proposed Police Consent Decrees in Louisville and Minneapolis*, (May 21, 2025), https://www.justice.gov/opa/pr/us-department-justices-civil-rights-division-dismisses-biden-era-police-investigations-and

(2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006). As to the municipality's "deliberate indifference," the plaintiff must either allege: (1) "prior instances of unconstitutional conduct demonstrating that the [municipality] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury"; or (2) "a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation[.]" *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005); *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 409 (1997).

Metro states that a failure-to-train theory is not "adequately supported." [DE 12 at 79]. Anderson does not address Metro's argument regarding his failure-to-train theory, effectively abandoning it. *See Degolia v. Kenton Cnty.*, 381 F. Supp. 3d 740, 759–60 (E.D. Ky. 2019) ("[I]t is well understood . . . that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." (quoting *Rouse v. Caruso*, 2011 WL 918327, at *18 (E.D. Mich. Feb. 18, 2011)) (internal quotation marks omitted); *Humphrey v. U.S. Attorney General's Off.*, 279 F. App'x 328, 331 (6th Cir. 2008) (recognizing that a party's lack of response to a motion or argument therein is grounds for the district court's grant of an unopposed motion to dismiss and noting that "if a plaintiff fails to respond or to otherwise oppose a defendant's motion, then the district court may deem the plaintiff to have waived opposition to the motion"); *Paulmann v. Hodgdon Powder Co., Inc.*, 2014 WL 4102354, *1-2 (W.D. Ky. Aug. 18, 2014) (holding that

plaintiff's failure to respond or otherwise oppose defendant's motion to dismiss established that the plaintiff had waived opposition to the motion).

Still, even if Anderson did not abandon this argument, he does not adequately plead a proper failure-to-train claim. The first element of a failure-to-train claim requires that the allegations must identify the "adequacy of the training program in relation to the tasks the particular officers must perform." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989).

In the Complaint, Anderson writes "LMPD made a policy, practice, or custom of inadequate staffing, hiring, supervision, training, retention, and discipline of personnel in the domestic violence unit that resulted in constitutional injuries." [DE 1 at 22]. But Anderson does not state that Metro does not train its police in its investigating of domestic violence incidents, enough to demonstrate that such misconduct is substantially certain to result. *Harvey v. Campbell Cty., Tenn.*, 453 F. App'x 557, 567 (6th Cir. 2011) (citation omitted)). Thus, the Complaint only offers "[c]onclusory allegations or legal conclusions masquerading as factual allegations [which] will not suffice." *Bright v. Gallia Cnty., Ohio*, 753 F.3d 639, 652 (6th Cir. 2014) (citation omitted). Those assertions are insufficient to survive the motion to dismiss. *See Phillips v. PTS of Am., LLC*, 2017 WL 4582801, at *2 (W.D. Ky. Oct. 13, 2017)) (dismissing failure-to-train claim where complaint "'contain[ed] no factual content' indicating 'what these polices or customs regarding training and supervision were, why they were inadequate, and how they contributed to the [alleged] violation of [the plaintiff's] constitutional rights.'").

Further, the Complaint does not allege facts demonstrating "a complete failure to train the [officers], training that is so reckless or grossly negligent that future . . . misconduct is almost inevitable or would properly be characterized as substantially certain to result." *Carter v. Louisville Metro. Police Dep't*, 2023 WL 5986137, at *4 (W.D. Ky. Sept. 14, 2023) (quoting *Harvey*, 453 F.

13

App'x at 567). First, its assertion that Defendants acted with deliberate indifference is a "bare assertion of [a] legal conclusion[.]" *Tackett*, 561 F.3 at 488. The Complaint does not allege facts which would show that "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Canton*, 489 U.S. at 390; *see also Ransom v. Louisville-Jefferson Cnty. Metro. Gov't*, 2020 WL 5944283, at *6 (W.D. Ky. Oct. 7, 2020) ("In essence, Plaintiff asks the Court to infer that Louisville Metro was 'deliberately indifferent' in training Defendant Officers because [of the officers' conduct].") Instead, it only states bare assertions that Metro acted with "deliberate indifference." [DE 1 at 23]. Second, even if the Complaint did sufficiently allege deliberate indifference, it does not allege that Defendants "created a training regimen so deficient that it was the actual *cause* of Defendant Officers' unconstitutional conduct." *Ransom*, 2020 WL 5944286, at *6 (emphasis in original) (quoting *Harvey*, 453 F. App'x at 567). In support of this theory, Anderson states that "LMPD made a policy, practice, or custom of inadequate staffing, hiring, supervision, training, retention, and discipline of personnel in the domestic violence unit that resulted in constitutional injuries." [DE 1 at 22]. But again, this is a bare legal conclusion that is insufficient to survive a motion to dismiss. *Anthony v. Roberson*, 26 F. App'x 419, 422 (6th Cir. 2001) ("[c]onclusory allegations are insufficient to state an arguable claim that an unconstitutional governmental policy caused [Plaintiff's] illegal arrest.")

As a result, the allegations are insufficient to "nudge[] [Plaintiffs' claims across the line from conceivable to plausible." *Twombly*, 550 at 547. Metro's motion to dismiss Count IV is **GRANTED and this claim is DISMISSED WITHOUT PREJUDICE**.

14

### B. Gwinn-Villaroel's Motion to Dismiss [DE 14]

Gwinn-Villaroel, in her official capacity, moves to dismiss the state-law claims against her. [DE 14]. Anderson responded stating that Gwinn-Villaroel is named as a defendant in the state-law claims, and the *Monell* claim. [DE 24 at 150]. In Gwinn-Villaroel's reply, she states even if she is named as a defendant in the *Monell* claim, it is redundant against Metro and must be dismissed. [DE 29 at 194].

#### 1. *State-law claims*

Anderson states that Gwinn-Villaroel is liable for the state-law claim of negligent hiring, supervision, retention, and general negligence. [DE 1 at 25]. Gwinn-Villaroel contends that sovereign immunity bars these claims. [DE 14 at 88].

Sovereign immunity at large precludes an action "against the state unless the state has given its consent or otherwise waived its immunity." *Yanero*, 65 S.W.3d at 517. State and county governments are likewise entitled to sovereign immunity. *Id.* at 526. But further, "[t]he absolute immunity from suit afforded to the state also extends to public officials sued in their representative (official) capacities, when the state is the real party against which relief in such cases is sought." *Id.* at 518. In other words, the official is "cloaked with the same immunity as the government or agency he/she represents." *Schwindel v. Meade Cnty.*, 113 S.W.3d 159, 169 (Ky. 2003). But when individuals are sued in "their individual capacities, public officers and employees enjoy only qualified official immunity, which affords protection from damages liability for good faith judgment calls made in a legally uncertain environment." *Id.* at 522. Here, it is undisputed that Gwinn-Villaroel is sued *only* in her "official capacity as LMPD Chief of Police." [DE 1 at 2]. As a result, she is entitled to sovereign immunity. *Yanero,* 65 S.W.3d at 518.

### 2.  1983 Monell Claims

The Complaint directs the *Monell* claim against "Defendant Louisville Metro Police Department." [DE 1 at 21]. But even if Gwinn-Villaroel were properly named as a defendant pursuant to the *Monell* claim, it would fail to state claim for relief.

Claims against Gwinn-Villaroel in her official capacity as Chief of the LMPD are equivalent to claims against Metro. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Scott v. Louisville/Jefferson Cnty. Metro Gov't*, 503 F.Supp.3d 532, 541 (W.D. Ky 2020) (naming individuals in their official capacity is redundant for the purpose of a § 1983 claim). It is well-established that "[s]uits against municipal employees in their official capacities 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Scott*, 503 F. Supp. 3d at 541 (quoting *Graham*, 473 U.S. at 165); *see also Schwindel,* 113 S.W.3d at 169 (citing *Yanero*, 65 S.W.3d at 522  and holding state officials sued in official capacity were "cloaked with the same immunity as the government agency he/she represents").

Because the Complaint names Gwinn-Villaroel only in her official capacity, the Court **GRANTS WITH PREJUDICE** Gwinn-Villaroel's motion to dismiss.

### C.  Humphrey's Motion to Dismiss [DE 15]

Humphrey, in his official capacity, moves to dismiss the state law claims against him. [DE 15]. Anderson responded stating that Humphrey is named as a defendant in both the state law claims and the *Monell* claim. [DE 24 at 167]. In Humphrey's reply, he states even if he is named as a defendant in the *Monell* claim, it is redundant against Metro and must be dismissed. [DE 30 at 203].

Humphrey, like Gwinn-Villaroel is sued in his official capacity as Chief of the LMPD. [DE 1 at 2]. The same analysis applied to Gwinn-Villaroel applies to Humphrey in his official capacity

16

as Chief of the LMPD. Accordingly, the Court **GRANTS WITH PREJUDICE** Humphrey's motion to dismiss.

### D. Farmer's Motion to Dismiss [DE 20]

Anderson brings four claims against Farmer. Two Section 1983 claims and two state-law claims. Farmer moves to dismiss all claims pursuant to absolute immunity, qualified immunity, or failure to state a proper claim for relief. [DE 20]. Anderson responded and Farmer replied. [DE 28; DE 32].

### 1. Federal Claims

Farmer states he is "entitled to absolute and qualified immunity warranting dismissal of plaintiff's federal claims" which include a § 1983 malicious prosecution claim and a § 1983 fabrication of evidence claim. [DE 20 at 121]. As it relates *solely* to the § 1983 fabrication of evidence claim, Farmer contends that Anderson failed to state a claim for relief. [*Id.* at 125]

#### i.   Absolute Immunity

In *Rehberg v. Paul*, the Supreme Court held that a "grand jury witness has absolute immunity from any § 1983 claim based on the witness' testimony." 566 U.S. 356, 369 (2012). And this applies to "to all grand-jury witnesses, even law-enforcement officers" who are alleged to have 'conspired to present false testimony.'" *King v. Harwood*, 852 F.3d 568, 584 (6th Cir. 2017) (quoting *Rehberg*, 566 U.S. at 370). In *King,* the Sixth Circuit noted:

> *Rehberg* does not affect the thin but conspicuous line between, on the one hand, law-enforcement officers who only provide grand-jury testimony (including related "preparatory activity, such as a preliminary discussion in which the witness relates the substance of his intended testimony," and including any conspiracy with prosecutors or other officers to testify falsely), and, on the other hand, law-enforcement officers who either (1) "set the wheels of government in motion by instigating a legal action,", or (2) "falsify affidavits" or "fabricate evidence concerning an unsolved crime," Only qualified immunity extends to the acts of officers in these latter situations.

17

*King,* 852 F.3d at 584 (internal citations omitted). Thus, although Anderson cannot use Farmer's grand jury testimony as a basis for his Complaint, which Anderson acknowledges in his response, Farmer is still potentially liable for "the investigative functions normally performed by a detective or a police officer." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). The Complaint does include allegations relating to Farmer's conduct outside of his testimony to the grand jury. For example, Anderson states that Farmer "falsif[ied] information contained in the criminal complaint," and that "Farmer located and selected information related to Plaintiff Michael D. Anderson, rather than the correct suspect" even after knowing the suspect's true identity. [DE 1 at 8; 17]. Thus, outside of Farmer's immediate statements to the grand jury, absolute immunity does not apply. *King,* 852 F.3d at 584.

### ii.    § 1983 Fabrication of Evidence

If a plaintiff is never convicted of a crime, the ensuing "§ 1983 fabrication claim arises under the Fourth Amendment, not the Due Process Clause." *Codrington v. Dolak*, 142 F.4th 884, 893 (6th Cir. 2025). To "prevail on this claim" Anderson "must show that defendants 'fabricated evidence presented to a grand jury or to a judge determining probable cause.'" *Id.* (quoting *Clark v. Abdallah,* 131 F.4th 432, 447 (6th Cir. 2025). "Fabrication means more than just wrong information—it means evidence offered 'knowingly' or in bad faith." *Anderson v. Knox County*, 2023 WL 4536078, at *5 (6th Cir. July 13, 2023).

Here, Anderson has plausibly alleged a claim for relief that Farmer "fabricated" evidence. Anderson states that Farmer's actions were in "bad faith" when he "falsified information contained in the criminal complaint." [DE 1 at 19; 24]. At this stage at the litigation, these allegations must be accepted as true. *Buehner v. City of Cleveland*, 788 F. Supp. 3d 827, 914 (N.D. Ohio 2025) (holding that allegations of "bad faith" must be accepted as true at the motion to dismiss stage).

18

Further, if an officer 'knew or reasonably should have known that the action he took would violate a [clearly established] right of the plaintiff,' bad faith may be found to exist." *Rowan Cty v. Sloas,* 201 S.W.3d 469, 485-86 (Ky. 2006); *Smith v. Holler Crawlers Off-Road, Inc.*, 2015 WL 5841385, *4 (E.D. Ky. Oct. 5, 2015) (applying the *Sloas* interpretation of bad faith). Here, Anderson states that "Farmer located and selected information related to Plaintiff Michael D. Anderson, rather than the correct suspect, as the Plaintiff is the first black Michael Anderson that is listed when searching the name in CourtNet." [DE 1 at 8]. All individuals have a clearly established right to be free from fabricated evidence under the Fourth Amendment. *Spurlock v. Satterfield,* 167 F.3d 995, 1005 (6th Cir. 1999). Thus, Farmer either "knew or reasonably should have known" that selecting information "relating to [Anderson]" rather than the "correct suspect" would violate Anderson's constitutional rights. And although this is an "objective component," the Court must accept as true the facts at this stage in the litigation. *Smith,* 2015 WL 5841385, at *4; *Total Benefits Plan. Agency, Inc.*, 552 F.3d at 434.

Accordingly, the Court **DENIES** Farmer's motion to dismiss Andersons's Section 1983 fabrication-of-evidence claim.

### iii.   Qualified Immunity

Notwithstanding the above, Farmer states that qualified immunity bars the federal claims and therefore must be dismissed. [DE 20 at 121]. Within the Sixth Circuit,

> [I]t is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity. Although a[] [government official's] entitle[ment] to qualified immunity is a threshold question to be resolved at the earliest possible point, that point is usually summary judgment and not dismissal under Rule 12.

*Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015) (internal quotation and citations omitted). There is no heightened factual showing that a plaintiff must make to survive a motion to dismiss

on qualified immunity grounds that differs from the plausibility standard established under *Iqbal. Id.* at 427–28. Although qualified immunity does protect the defendant from all burdens of litigation, including "the burdens of discovery," *Iqbal*, 556 U.S. at 672 (citations omitted), the fact-intensive nature of a qualified immunity defense makes it "difficult for a defendant to claim qualified immunity on the pleadings *before discovery*[.]" *Wesley*, 779 F.3d at 434 (quoting *Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Vill. Sch. Dist.*, 428 F.3d 223, 235 (6th Cir. 2005) (Sutton, J., concurring)) (emphasis in original).

The Sixth Circuit follows a twostep inquiry in reviewing a claim for qualified immunity. "First, we consider '(1) whether the plaintiff has asserted a violation of a known [ ] constitutional right; and (2) whether the constitutional right was so clearly established at the time in question that a reasonable official in the defendant's position would have known that he was violating the plaintiff's constitutional rights.'" *Gregory v. City of Louisville,* 444 F.3d 725, 745 (6th Cir. 2006).

It is a known constitutional right that one cannot knowingly fabricate evidence. *Id.* at 737. This can include a "reckless disregard for the truth." *Vakilian v. Shaw,* 335 F.3d 509, 517 (6th Cir. 2003). And for qualified immunity to apply, it requires "good faith" by the defendant. *Clark,* 131 F.4th at 454; *see also, Yanero,* 65 S.W.3d at 522 (stating that qualified immunity only applies to public officers who perform their duties "in good faith.")

As discussed above, Anderson has stated a plausible claim that Farmer acted in "bad faith" and purposefully "falsified" a criminal complaint. [DE 1 at 8; 19; 24]. If one acts in bad faith, that identical act cannot be found to be in good faith. *McMillen v. Windham,* 2019 WL 4017240, *16 (W.D. Ky. Aug. 26, 2019) (holding that for qualified immunity to be met the act must be in good faith "*i.e.,* not made in bad faith"). This is sufficient to demonstrate a "reckless disregard for the truth" because, as Anderson states, Farmer knew the identity of the correct suspect, yet chose

20

Anderson instead. [DE 1 at 8]. Thus, qualified immunity is not appropriate at this stage. *See In re Flint Water Cases,* 960 F.3d 303, 324 (6th Cir. 2020) (stating that qualified immunity is usually resolved at "summary judgement and not dismissal under Rule 12") (quoting *Wesley,* 779 F.3d at 433-34).

Accordingly, Farmer's motion to dismiss the federal claims is **DENIED**.

### 2.   *State-Law Claims*

#### i.    Malicious Prosecution

In addition to the above, Anderson alleges a state-law malicious prosecution claim against Farmer. [DE 1 at 23]. Farmer asserts the claim should be dismissed as it fails to state a claim for relief. [DE 20 at 126].

To prevail on a malicious prosecution claim under Kentucky State Law, a plaintiff must prove that "1) the defendant initiated, continued, or procured a criminal or civil judicial proceeding, or an administrative disciplinary proceeding against the plaintiff; 2) the defendant acted without probable cause; 3) the defendant acted with malice, which, in the criminal context, means seeking to achieve a purpose other than bringing an offender to justice; and in the civil context, means seeking to achieve a purpose other than the proper adjudication of the claim upon which the underlying proceeding was based; 4) the proceeding, except in ex parte civil actions, terminated in favor of the person against whom it was brought; and 5) the plaintiff suffered damages as a result of the proceeding." *Martin v. O'Daniel,* 507 S.W.3d 1, 11-12 (Ky. 2016). Malice may be inferred from a "lack of probable cause" coupled with other evidence. *Massey v. McKinley*, 690 S.W.2d 131, 133 (Ky. App. 1985); *Seiller Waterman, LLC v. RLB Props., Ltd.,* 610 S.W.3d 188, 200 (Ky. 2020). A defendant may also act with malice if they commit an "intentional doing of a wrongful act to the injury of another, with an evil or unlawful motive or purpose."

*Phat's Bar & Grill v. Louisville Jefferson Cnty. Metro Gov't*, 918 F. Supp. 2d 654, 665 (W.D. Ky. 2013).

Farmer states that because the "malice" element cannot be met, the claim must fail. [DE 20 at 127]. In support of this argument, Farmer contends that Anderson may not support his malicious prosecution claim on the evidence Farmer presented to the grand jury pursuant to *Rehberg*. [DE 20 at 128]. Although this is true, Anderson describes numerous other instances of Farmer's conduct. Anderson states that Farmer "had known the identify of and specific biographic information for the correct suspect since January 2023." [DE 1 at 7]. And even though Farmer knew the identity of the correct suspect, and it was not Anderson, "Farmer located and selected information related to Plaintiff Michael D. Anderson, rather than the correct suspect." [*Id.* at 8]. Therefore, "[n]o probable cause existed to believe Plaintiff Michael D. Anderson assaulted the victim on January 15, 2023, and fired a gun in her direction" and "no objectively reasonable law enforcement official would conclude probable cause existed to believe that Plaintiff Michael D. Anderson assaulted the victim on January 15, 2023, and fired a gun in her direction." [*Id.* at 9]. Taking these facts as true, malice may be inferred from a "lack of probable cause," coupled with the statement that Farmer only chose Anderson because he was "the first black Michael Anderson" listed on CourtNet. [DE 1 at 8]. *See Total Benefits Plan. Agency, Inc.*, 552 F.3d at 434. As a result, Anderson has plausibly stated a claim for relief at this stage.

Farmer's motion to dismiss the state law malicious prosecution claim is **DENIED.**

### ii.    Negligence

Farmer states "if the Court were to allow plaintiff to proceed with his state-law malicious prosecution claim, plaintiff is foreclosed from asserting his negligence claim." [DE 20 at 128]. Or in the alternative, that qualified immunity applies. [*Id.* at 129]. In response, Anderson cites a

Second Circuit opinion, *Henry v. Daytop Village, Inc.*, 42 F.3d 89 (2d Cir. 1994) for the proposition that a plaintiff may pursue claims "in the alternative." [DE 28 at 189].

Although courts may permit a plaintiff to plead in the alternative, "a plaintiff cannot proceed with a claim for negligence where the claim is really a malicious prosecution claim." *Estep v. Combs*, 366 F.Supp.3d 863, 886 (E.D. Ky. 2018) (quoting *Jones v. Clark Cnty.*, 2016 WL 4146119, at *9 (E.D. Ky. Aug. 3, 2016) (*rev'd and remanded on other grounds*, 690 F. App'x 334 (6th Cir. 2017)). In other words, when a plaintiff uses the "same factual allegations" for both claims, "it would allow the plaintiff" to evade the higher standards of the intentional tort." *Harmon v. Harper*, 2020 WL 3013890, at *4 (W.D. Ky. June 4, 2020); *Wilson v. Louisville-Jefferson Cnty Metro. Gov't*, 2021 WL 1700357 (W.D. Ky. Apr. 29, 2021). It is irrelevant that the causes of action use different legal standards. *Id.*

To support his claim for negligence, Anderson states Farmer violated his legal duty "by using [his] authority as [a] law enforcement official[] to wrongfully and forcibly, detain, arrest, and *maliciously prosecute* the Plaintiff." [DE 1 at 28 (emphasis added)]. In other words, Anderson is pleading that Farmer "*negligently* [maliciously prosecuted] him" which is not a "cognizable nor recognized intentional tort claim." *Harmon,* 2020 WL 3013890, at *4. Anderson's singular citation to *Henry* regarding pleading in the alternative is not persuasive. Plaintiffs are often permitted to plead in the alternative when either claim is viable. But this is option is not available when one claim is not "cognizable." *Harmon,* 2020 WL 3013890, at *4.[5]

Thus, Anderson "fails to allege an independent basis for his negligence claim that is distinct" from his malicious prosecution claim. *Harmon,* 2020 WL 3013890, at *4. Anderson's negligence claim is **DISMISSED WITH PREJUDICE**.

---

[5] Because the Court is dismissing the claim for failure to state a claim for relief, the Court need not reach whether qualified immunity applies.

23

## IV.    Conclusion

For the reasons explained, and the Court being otherwise sufficiently advised, it is **ORDERED** that:

1. Metro's motion to dismiss [DE 12] is **GRANTED** and the **state-law claims** are **DISMISSED with PREJUDICE and the *Monell* claim is DISMISSED without PREJUDICE**.

2. Gwinn-Villaroel's motion to dismiss [DE 14] is **GRANTED** and the claims are **DISMISSED with PREJUDICE**.

3. Humphrey's motion to dismiss [DE 15] is **GRANTED** and the claims are **DISMISSED with PREJUDICE**.

4. Farmer's motion to dismiss [DE 20] is **GRANTED in PART and DENIED in PART.**

5. All other claims **REMAIN PENDING**.

Rebecca Grady Jennings, District Judge
United States District Court

June 9, 2026

24